UNITED STATES of America,

v.

Alexander LEVINER, Defendant.

No. CRIM. 97–10260–NG.

United States District Court,
D. Massachusetts.

Dec. 22, 1998.

Leo Sorkin, Federal Defender Office, Boston, MA, for Alexander Leviner, Defendant.

Roger Witkin, Boston, MA, for Derrick Johnson, Defendant.

Marianne C. Hinkle, United States Attorney's Office, Boston, MA, for U.S.

---

*SECOND AMENDED ORDER
RE: SENTENCING*

GERTNER, District Judge.

TABLE OF CONTENTS
SECOND AMENDED ORDER RE: SENTENCING

I. FACTS ................................................... 24
  A. Offense ............................................ 24
  B. Offender ........................................... 25
II. GUIDELINE CALCULATIONS ........................... 25
III. SHOULD A FELONY CONVICTION RECEIVED AFTER THE INSTANT OFFENSE BE COUNTED IN CONNECTION WITH SENTENCING FOR FELON IN POSSESSION CHARGE? ............................... 26
  A. 18 U.S.C. Section 922(g)(1) ........................ 26
  B. Structure of the Guidelines ....................... 27
  C. Language of the Guidelines ........................ 28
IV. WHETHER LEVINER'S CRIMINAL HISTORY OVERSTATES HIS CULPABILITY ..................................... 31
  A. Purpose of the Criminal History System ........... 32
  B. The Significance of Measuring Criminal History Points by the Length of Sentence the Prior Conviction Received ....................... 32

1.  The criminal history score does not accurately reflect the relatively minor nature of Leviner's record.........................32

    2.  The criminal history score does not accurately reflect the non-violent nature of Leviner's record. ........................32

    3.  The criminal history score mirrors disparities in state sentencing, and in particular, racial disparities. ........................33

  C.  The Defendant's Overall Record Relative to Other Offender Information .......33

V.  THE RELATIONSHIP BETWEEN THIS FEDERAL SENTENCE AND A PENDING STATE SENTENCE ........................34

VI.  SENTENCE ........................34

The sentencing of Alexander Leviner (hereinafter "Leviner") raises two major issues:

First, should Leviner's sentence for Felon in Possession of a Firearm be based on a conviction that occurred *after* the possession itself, as the Government argues. I conclude that it should not. If the United States Sentencing Commission Guideline ("the Guideline(s)") commentary suggests such an interpretation—and in my judgment, it does not—then the commentary is necessarily trumped by the Felon in Possession statute itself, 18 U.S.C. § 922(g), and the language of the Guidelines, not to mention logic and fundamental fairness. *See infra* Section III.

Second, should this Court depart from the Guideline range on the grounds that Leviner's record—overwhelmingly motor vehicle violations and minor drug possession offenses—overstates his culpability and the likelihood of his recidivism? I conclude that Leviner's record does so, and thus I will depart downward. *See infra* Section IV. A system for evaluating criminal history, like the Federal Guidelines system, which assigns points for past convictions solely according to the length of sentence the defendant received, necessarily replicates disparities in state sentencing. Furthermore, even more profound concerns are raised where, as here, the defendant is African American, the convictions were largely motor vehicle offenses, for which the defendant was imprisoned. The scholarly and popular literature strongly suggests that there is racial disparity in the rates at which African Americans are stopped and prosecuted for traffic offenses. That literature, together with the specific facts about Leviner's record and background,

compel me to depart from the Guideline range.

Alexander Leviner pled guilty to the charge of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). The indictment charges Leviner with possessing a 9 mm Smith and Wesson, semiautomatic handgun, together with fourteen rounds of ammunition. Leviner, the indictment further charges, had previously been convicted of a crime punishable by a term of imprisonment exceeding one year.

The data on which this sentencing decision is based are as follows: A two-day hearing that was held on Defendant's Motion To Suppress, which described the circumstances of Leviner's arrest; (*see* Memorandum and' Order dated June 29, 1998); the plea colloquy; and a two-day sentencing hearing.

## I. FACTS [1]

### A. Offense

The car in which Leviner was a passenger was observed by police officers as traveling at a high rate of speed, without headlights, from an area in which shots had reportedly been fired. The officers followed the car and stopped it. The officers reported that the occupants of the car (the driver—Denise Cummings, the front seat passenger—Derrick Johnson, and Leviner, who was seated in the rear) were cooperative, that they produced the requested documentation (license and registration for the driver, identification for the passengers), answered all questions posed to them, and even agreed to be searched. But for the fact that Cumming's registration did not match the car she was driving, the officers were prepared to allow

---

1. These facts derive from two sources: The Presentence Report and my Memorandum on Defendants' Motion To Suppress (dated June 29, 1998).

them to leave. As a result of the registration disparity, Leviner and the others were asked to step out of the car. At some point the officers found a holster on Leviner, and he fled. The officers apprehended him almost immediately and found the gun in question on the car floor near where Leviner had been sitting.

The Government has also represented that tests indicate that shots had been fired from Leviner's gun and a shell casing was found on the car floor. There was, however, no indication that the gun was fired at anyone in particular, or even that anyone was threatened by its use. The Government does not even make such an accusation.

The offense is unquestionably a serious one. The Assistant United States Attorney quite appropriately points out that this was not the mere possession of the firearm, but its firing. While the gun was not used to threaten anyone, it was nevertheless *used.*[2]

#### B. *Offender*

Leviner has had a consistent employment record. He is a trained asbestos removal worker, regularly employed over the past ten years. Moreover, he was raised in a stable family situation, and has maintained close ties with his extended family and his children. Impressively, the courtroom was filed with family and friends for each hearing.

Additionally, while Leviner has a relatively long record, it consists almost entirely of motor vehicle offenses, and minor drug possession charges. Except for a conviction for assault when he was seventeen (Leviner is now thirty-three), his record is overwhelmingly non-violent.

If I were to apply the Sentencing Guidelines to this case uncritically, none of these facts would make much of a difference. Instead, what would matter most in determining Leviner's sentence would be two numbers on a grid—the fact that this offender has a relatively high criminal history score—a Category V, without regard to its nature, and the fact this Felon in Possession of a

Firearm offense is graded more severely because Leviner has two felony convictions, without regard to the fact that one conviction took place two weeks after Leviner possessed the gun.

While the Sentencing Guidelines were designed to eliminate unwarranted disparities in sentencing, and constrain a judge's discretion, they are not to be applied mechanistically, wholly ignoring fairness, logic, and the underlying statutory scheme.

#### II. *GUIDELINE CALCULATIONS*

The Guideline calculations reflected in the Presentence Report, and endorsed by the Government, are the following:

A. The base offense level: Based on Probation's conclusion that Leviner has two prior convictions for controlled substance offenses, under USSG § 2K2.1(a)(2) the offense level is 24.

I reject this interpretation for the reasons described in Section III. Consequently, considering only the one felony conviction within the meaning of the Guidelines—the one that actually occurred *prior* to the firearm possession—the base offense level is 20.

B. Adjustment for Acceptance of Responsibility: All parties agree that Leviner is entitled to a 3 point reduction for acceptance of responsibility.

C. Total offense level: The offense level is 17.

D. Criminal History: Leviner's criminal history score, according to the Presentence Report, is a Category V, based on a score of 11.

I reject this calculation for the reasons described *infra* in Section IV. Instead, I conclude that Leviner's criminal history vastly overstates his true culpability and his likelihood of recidivism on this offense. Accordingly, I base my calculations on a criminal history score of 4.

Based on the Sentencing Table, the Guideline imprisonment range is 30 to 37 months.

---

**2.** In his Sentencing Memorandum, Leviner suggests that he was drunk, and on a sort of a "joyride." "Joyride" or not, the community had

a right to its tranquility without gunshots piercing the night's calm.

I will sentence this defendant to a term of 30 months.[3]

## III. SHOULD A FELONY CONVICTION RECEIVED AFTER THE INSTANT OFFENSE BE COUNTED IN CONNECTION WITH SENTENCING FOR FELON IN POSSESSION CHARGE?

■ The Government maintains that Leviner's base offense level should be 24 under USSG § 2K2.1. Their calculation takes into account the fact that two weeks after his arrest on the instant charge, Leviner was convicted of another felony.

The Government's argument makes no sense in terms of the language of 18 U.S.C. § 922(g)(1), or the structure and language of the Guidelines.[4]

### A. 18 U.S.C. Section 922(g)(1)

Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1), is the prototypical status offense.[5] It says that "[i]t shall be unlawful for any person—who *has been convicted* in any court of a crime punishable by imprisonment for a term exceeding one year" to possess any firearm. 18 U.S.C. § 922(g)(1)(italics supplied). In short, it criminalizes the possession of a weapon on the part of someone who has a certain status, one who "has been convicted" of a felony.[6]

The phrase "has been" in § 922(g), a verb in the present perfect tense, was interpreted by the Supreme Court in a section of § 922 that was the precursor to § 922(g). In *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), the Supreme Court held that the Gun Control Act of 1968 applied to a convicted felon's intrastate purchase from a retail dealer of a firearm that previously, but independently of the felon's receipt, had been transported in interstate commerce. *See* 423 U.S. at 225, 96 S.Ct. 498. The relevant language of § 922(h)[7] made it

---

3. Leviner mounts a number of challenges to the Government's calculations, in addition to those described above. Leviner objects to assessing one criminal history point for a drug conviction arising out of a 1985 arrest. He argues that the Guidelines place a cap at 4 criminal history points for all convictions for which he received less than sixty days in jail. Leviner contends that Probation is obliged to begin "counting" criminal history convictions with the most recent one first and then stop when the score 4 is reached. Since Leviner has offenses which are more recent than the 1985 offense, he contends that these offenses should be counted first and that the 1985 offense (for possession with intent to distribute marijuana) should not have been considered at all. Nothing in the Guidelines supports this approach. Rather, Probation appropriately scored all offenses, and then "capped" the criminal history total score for them at 4.

4. I do not suggest by this discussion that it does not matter that two weeks after Leviner was arrested on this charge, he was convicted for this drug offense. It matters, to be sure, as part of the Court's evaluation of the defendant's criminal history and the ultimate sentence within the appropriate range. This discussion only suggests that the conviction cannot be counted as an enhancement to offense conduct, as framed by 18 U.S.C. § 922(g), when it had nothing to do with the offense conduct. The offense was completed before the facts comprising this supposed enhancement took place.

5. Typically, the label, "status crime" has been applied to offenses like vagrancy, which crimi-

nalize a status rather than an act. Arguably "crimes of possession" are in between "action crimes" and "status crimes." *See* John Gardner, *The Gist of Excuses*, 1 Buff.Crim. L.Rev. 575, 575 n. 1 (1998). However, some would suggest that the definition of "status offense" is broader. Black's Law Dictionary, for example, defines a status crime as "[a] class of crime which consists not in proscribed action or inaction, but in the accused's having a certain personal condition or being a person of a specified character." BLACK'S LAW DICTIONARY 1410 (6th ed.1990).

Indeed, § 922(g) includes a wide range of traditional statuses—being an unlawful user of controlled substances (§ 922(g)(3)), being adjudicated a mental defective (§ 922(g)(4)), being an individual who has renounced his citizenship (§ 922(g)(7)), as well as the instant one, being a person who "has been convicted" of a felony.

6. The focus of the statute on the offender's status as of the time of possession is nowhere more clear than in the cases dealing with the impact of the expungement of convictions, after the firearm possession. In *United States v. Brzoticky*, 588 F.2d 773 (10th Cir.1978), for instance, the court held that the prohibitions imposed by § 922(g)(1) apply to a person who pleads guilty to a felony, commits a crime, and then has that felony expunged pursuant to state procedures. *See* 588 F.2d at 775. The court focused on the defendant's status *at the time of* the possession. *See id.* at 774–75 (emphasis added).

7. In 1976, 18 U.S.C. § 922(h) provided:

unlawful for a convicted felon "to receive any firearm or ammunition which *has been* shipped or transported in interstate or foreign commerce." *Id.* at 213, 96 S.Ct. 498 (italics supplied). The Court attached significance to the fact that while the proscribed act, "to receive any firearm," was drafted in the present tense, the interstate commerce reference, "has been shipped," was in the present perfect tense. The Court concluded that the use of the present perfect tense "denot[ed] an act that has been completed." *Id.* at 216, 96 S.Ct. 498. It refers to a firearm "that already has completed its interstate journey and has come to rest in the dealer's showcase *at the time of* its purchase and receipt by the felon." *Id.* at 217, 96 S.Ct. 498 (emphasis supplied). Congress, the Court concluded, "knew the significance and meaning of the language it employed." *Id.* Indeed, the Court pointed to other parts of the statute in which Congress had used the same language, notably in § 922(h)(1), "a person who 'has been convicted'," and contrasted that usage to other sections in which Congress used the present tense (*see e.g.*, § 922(h)(2)—"who is a fugitive from justice"). *Id.*

The present § 922(g) uses precisely the same tenses to convey the same meanings.[8]

(h) It shall be unlawful for any person
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
(2) who is a fugitive from justice;
(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in § 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in § 4731(a) of the Internal Revenue Code of 1964); or
(4) who has been adjudicated as a mental defective or who has been committed to any mental institution; to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(h) (1976).

8. The original § 922(g) only covered "to ship or transport" any firearm in interstate commerce, while § 922(h) covered receiving such a firearm. In 1986, §§ 922(g) and 922(h) were amended. *See* Pub.L. 99–308 (1986). The current § 922(g) was expanded to include the "to receive" language formally found in § 922(h) at the time of the *Barrett* decision. *See id.* The current

If, as the Supreme Court held in *Barrett,* the phrase "has been shipped" refers to an event that was completed *before* the convicted offender "receive[s]" the firearm, then "has been" convicted means a conviction status that was complete *before* the offender "possesse[s]" the firearm.

## B. *Structure of the Guidelines*

Like most criminal statutes, § 922(g) describes a wide range of behavior, with degrees of culpability within it. Chapter 2 of the Guidelines, the "Offense Conduct" section, appropriately attempts to distinguish among the categories of offense conduct covered by the underlying statutes. Thus, U.S.S.G. § 2K2.1 describes enhancements under § 922(a) for the number of firearms possessed by a defendant (the more the felon possesses, the more serious the crime), the type of firearm (the possession of certain firearms is more serious than the possession of others), the condition of the serial number (an obliterated number may suggest more culpable behavior), the legal status of the firearm (likewise, a stolen firearm), etc.[9] Significantly for this discussion, all of these enhancements relate to conduct at the time of the possession offense—not afterwards.

§ 922(h) was amended to focus on individuals employed by persons covered by § 992(g).

9. Section 2K2.1 provides in pertinent part:
(a) Base Offense Level:
(1) 26, if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense; or
(2) 24, if the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense; or
(3) 22, if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and the defendant had one prior felony conviction of either a crime of violence or controlled substance offense; or

(b) Specific Offense Characteristics:
(1) If the offense involved three or more firearms, increase as follows:
. . .
(3) If the offense involved a destructive device, increase by 2 levels.
(4) If any firearm was stolen, or had an altered or obliterated serial number, increase by 2 levels . . .

Moreover, the Guidelines provide for enhancements depending upon the record of the individual possessing the firearm. There is a difference in culpability, so the Commission found, between someone who possesses a firearm after having been convicted of major offenses, §§ 2K2.1(1),(2),(3) and (4), and someone who possesses a firearm who is "only" a prohibited person, convicted of a single felony, § 2K2.1(6). There is also a difference between one who has "had one prior felony conviction," § 2K2.1(a)(4)(A), or "had at least two prior felony convictions." § 2K2.1(a)(2). These enhancements make sense, as do the others, but only insofar as they apply to the defendant's status at the time of the possession of the firearm.

The structure of the Guidelines reinforces this conclusion: While Chapter 2—"Offense Conduct," focuses on the offense, Chapter 4—"Criminal History and Criminal Livelihood," focuses on the offender. Each chapter promotes a different sentencing purpose or mix of purposes specified in 18 U.S.C. § 3553(a)(2). While Chapter 2 reflects the goals of retribution, and just deserts, Chapter 4 places a greater emphasis on rehabilitation and recidivism.[10] It thus makes sense to consider under the "offense" rubric, those convictions which defined Leviner's status at the time he committed the crime, and, under the "offender" rubric, all aspects of his criminal history.

### C. *Language of the Guidelines*

The language of the relevant Guidelines buttresses the conclusion that the relevant convictions are those which occurred before the possession offense, not after. I will describe the sequence of the analysis:

U.S.S.G. § 2K2.1 (1997).

10. To a degree, the criminal history section also reflects a *"just deserts"* rationale. *See* Kate Stith and Jose A. Cabranes, *Fear of Judging, Sentencing Guidelines in the Federal Courts* 72 (1998); Aaron J. Rappaport, *Editor's Observations: Criminal History and the Purposes of Sentencing,* 9 FSR 184, 186 (1997).

11. U.S.S.G. § 2K2.1 Commentary Application Note 5 states: " 'Crime of violence,' 'controlled substance offense,' and 'prior felony conviction(s),' are defined in § 4B1.2 (Definitions of Terms Used in § 4B1.1), subsections (1) and (2), and Application Note 1 of the Commentary, re-

1. U.S.S.G. § 2K2.1(a)(2): The starting point is U.S.S.G. § 2K2.1(a)(2), in the Offense Conduct chapter. It assigns a score of 24, "if the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance." Since, as described above, the statute itself, § 922(g), does not make distinctions amongst prior felonies, it falls to the Sentencing Guidelines to do so.

2. Note 5 to U.S.S.G. § 2K2.1: Rather than defining conviction history one way for "Offense Conduct" purposes in Chapter 2 and another way for "Criminal History" purposes in Chapter 4, Note 5 to U.S.S.G. § 2K2.1 directs the reader to the latter.[11] The first sentence of Note 5 points the reader to U.S.S.G. § 4B1.2 (the section in the Criminal History section on Career Offenders and Criminal Livelihood) and Note 1 of the Commentary to the section, for the definitions of "crime of violence," "controlled substance offense," and more important for this discussion, "prior felony convictions." U.S.S.G. § 2K2.1, comment, (n.5)

The second sentence points the reader to § 4A1.1, the general criminal history guideline, to count the number of "such convictions" (which then bears on the various enhancements under § 2K2.1—one felony, two felonies, and their nature, etc.).[12] *Id.*

The phrase: "Such prior convictions," however, has to be read in the context of an analysis of offense behavior. It plainly refers only to those convictions that have relevance to the enhancements in the offense under § 2K2.1, namely, those convictions extant as of the time of the firearm possession.

spectively. For purposes of determining the number of such convictions under subsections (a)(1), (a)(2), (a)(3), and (a)(4)(A), count any such prior conviction that receives any points under § 4A1.1 (Criminal History Category)." U.S.S.G. § 2K2.1 comment, (n.5).

12. The concern suggested by the reference to § 4A1.1 in Note 5 is clear. It is to avoid the traditional pitfalls of criminal history computations—whether to consider convictions before the defendant's eighteenth birthday, stale convictions, multiple convictions stemming from a single course of behavior—the Note directs the reader to the guideline which addresses such issues.

3. Cross References to Chapter 4, Criminal History and Criminal Livelihood chapter: This interpretation is buttressed by the language in §§ 4B1.2 and 4A1.1.[13] Neither section addresses the issue here: What is the universe of convictions to be considered under the Felon in Possession Guideline? Rather, each suggests how to count those prior convictions that are presumptively within the Felon in Possession Guideline. Simply referring to the standards governing the scoring of convictions, when the goal is *a criminal history score*, does not answer the question of what are the convictions to which this guideline should apply when "felon in possession" *offense conduct* under § 2K2.1 is concerned.

Section 4B1.2, for example, defines "two prior felony convictions" to mean that the defendant "committed the instant offense *subsequent* to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." (Italics supplied.) Prior convictions, in short, under § 4B1.2(c) means convictions prior to the "instant" offense.[14]

Nor does the reference to the general criminal history guideline provided for in § 4A1.1, contradict this interpretation. Convictions under the general criminal history rules are scored according to the "prior sentence" the defendant received. *See infra,* Section IV. "Prior sentence," according to Note 1 of § 4A1.1, is defined in § 4A1.2(a), as covering sentences imposed *"for conduct not part of the instant offense."* (Italics supplied).

Sections 4A1.1 and 4B1.2, in short, leave open the question of what is or is not part of the "instant offense." The answer under the statute is clear: Where the "instant offense"

---

13. U.S.S.G. § 4B1.2—Definition of Terms Used in Section 4B1.1 states:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
(b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense.
(c) The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense ... and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §§ 4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*.
U.S.S.G. § 4B1.2. (1997).
U.S.S.G. § 4A1.1—Criminal History Category states:

The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.
(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.
(f) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was considered related to another sentence resulting from a conviction of a crime of violence, up to a total of 3 points for this item. *Provided,* that this item does not apply where the sentences are considered related because the offenses occurred on the same occasion.
U.S.S.G. § 4A1.1 (1997)

14. Section 4B1.2(b) also defines "controlled substance offense." *See supra* note 13. Leviner had one such conviction before his possession of a firearm and another two weeks afterward.

is Felon in Possession of a Firearm, the universe of convictions are those that predate the act of possession.

The Government focuses on the second sentence of Note 5 to U.S.S.G. § 2K2.1, to the exclusion of all else. The basis of the Government's argument is that by referring to § 4A1.1, Note 5 equates the computation of prior convictions for the purpose of determining criminal history, with the computation of prior convictions for the purpose of determining the offense of conviction. Criminal history, since it looks to the offender and not the offense, obviously includes any convictions obtained before the date of the sentencing. "Prior convictions" and "prior sentence"—in the context of traditional criminal history evaluations—means any convictions obtained prior to sentencing. If that is the approach to criminal history, so the argument goes, then that is the approach to computing enhancements to offense conduct.

If the Guidelines say what the Government argues, it is, in a nutshell, patently inconsistent with § 922(g). Guideline commentary is not authoritative if it "violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598, (1993).[15] The Government's interpretation falls under almost all of the *Stinson* tests. It violates the relevant statute and is a "plainly erroneous" reading of the Guidelines. The Commission can obviously articulate the facts of the offense within the heartland which the statute criminalizes. It can even identify which factors enhance the penalty, so long as the Guidelines are within the statutory definitions and maximum penalties. What the Commission cannot do is to remake the offense as it sees fit.

However, I do not have to reach the question of whether the Guideline and the statute are inconsistent. The two guidelines §§ 2K2.1 and 4A1.1 can be harmonized with the plain meaning of 18 U.S.C. § 922(g). As the above analysis suggests, Note 5 to U.S.S.G. § 2K2.1, which points to § 4A1.1, gives the court guidance about how to compute the number of convictions; it does not suggest which convictions fit within the ambit of countable convictions in the first instance. Section 922(g) does that, defining the elements of the offense—possessing a gun after having been convicted of a felony or felonies of a certain kind. As such I find that countable convictions under § 2K2.1 are only those entered prior to the firearm possession.

In so finding, I adopt the reasoning of the Sixth Circuit in *United States v. Barton,* 100 F.3d 43, 46 (6th Cir.1996),[16] addressing this issue directly, and reject that of the Tenth Circuit in *United States v. McCary,* 14 F.3d 1502 (10th Cir.1994), the Fifth Circuit in *United States v. Gooden,* 116 F.3d 721 (5th Cir.1997) and the D.C. Circuit in *United States v. Pugh,* 158 F.3d 1308 (D.C.Cir.1998).

In *McCary,* for example, no matter what the Tenth Circuit said about what it was doing, the conviction at issue in fact predated

---

**15.** The *Stinson* case addressed the legal impact of commentary on a sentencing decision. *See generally* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598. At issue was commentary to § 4B1.2, and specifically, the definition of the term "crime of violence." *See id.* at 39, 113 S.Ct. 1913. Originally the Guideline and the commentary did not specifically state whether the offense of felon in possession of a firearm was (or was not) a "crime of violence" for career offender guideline purposes. Most circuits that had addressed the issue had ruled that, depending on the circumstances, the felon in possession offense was a crime of violence for purposes of the career offender guideline. *See id.* at 47, 113 S.Ct. 1913. The defendant in *Stinson* was convicted of the felon in possession offense. The district court held that the career offender guideline applied because the offense was a crime of violence. *See id.* at 38, 113 S.Ct. 1913. The Eleventh Circuit affirmed, after which the Sentencing Commission promulgated Amendment 433, revising the commentary to § 4B1.2 specifically to state that "the term 'crime of violence' does not include the offense of unlawful possession of a firearm by felon." *See id.* at 39, 113 S.Ct. 1913. The defendant asked the Eleventh Circuit for a rehearing. The Eleventh Circuit, *en banc,* denied a rehearing and held that commentary was of "limited authority" and not "binding" on courts. *See id.* at 39, 113 S.Ct. 1913. An unanimous Supreme Court reversed. *See id.* at 48, 113 S.Ct. 1913.

**16.** The Sixth Circuit held "that for purposes of § 2K2.1(a)(1) and (a)(3), only those convictions that occur prior to the commission of the firearm offense may be counted against the defendant in determinating the base offense level." *Id.*

the firearms offense. *See* 14 F.3d at 1505–06. Nor do I accept the reasoning of the D.C. Circuit in *Pugh*, which mischaracterized the reference to the criminal history guidelines in the Felon in Possession offense guideline. *See* 158 F.3d 1308, 1310. It quotes "the commentary to § 4A1.2 which defines "prior sentence" (as used in § 4A1.1) as "a sentence imposed prior to sentencing on the instant offense." U.S.S.G. § 4A1.2, comment (n.1)." *Id.* The quote, however, was a partial one. The court left out the phrase "other than a sentence for conduct that is part of the instant offense." U.S.S.G. § 4A1.2, comment (n.1). As noted above, conduct that is "part of the instant offense" is the act of possessing a firearm by someone who *has had* certain convictions.

## IV. *WHETHER LEVINER'S CRIMINAL HISTORY OVERSTATES HIS CULPABILITY*

█ Leviner's criminal history category score is 11. It is the second highest category that an offender can receive under the Sentencing Guidelines; a Category V out of a possible VI.[17] If the numerical scores accurately reflect Leviner's likelihood of recidivism, I would be deeply concerned, but they do not. Indeed, Leviner's case acutely demonstrates the limitations of the criminal history rankings under the Guidelines.

Leviner receives seven criminal history points as a result of motor vehicle offenses, all but one of which was operating a motor vehicle after suspension of his license:

1) On January 20, 1994, Leviner used a motor vehicle without authority and illegally possessed marijuana. Charges were brought in the Boston Municipal Court, Leviner was sentenced to three months in the House of Correction, suspended. For this, he received one criminal history point under the Guidelines.

2) On September 21, 1994, he was charged in the Waltham District Court with operating a motor vehicle after his license had been suspended (2d offense). On May 31, 1995, he received a six months House of Correction sentence, suspended. One criminal history point was assigned.

3) On March 2, 1995, he was arrested by the Brookline Police and charged with operating after his license was suspended and operating an uninsured motor vehicle. On November 5, 1997, he received sixty days in the House of Correction. As a result of the sentence, two criminal history points were assigned.

4) On April 21, 1995, he was arrested by the Milton Police Department, and charged with operating a motor vehicle after his license was suspended, and, on the same day, pled guilty to the charge. He was sentenced to ten days in a House of Correction. One criminal history point was assigned.

When the instant offense was committed on September 14, 1997, Leviner was on probation for the motor vehicle convictions in Quincy and Waltham, and the Boston Municipal Court use without authority/marijuana possession case. As a result, two more points were added to his score pursuant to U.S.S.G. § 4A1.1(d), for a total of seven points.

The remaining four criminal history points were for possession of a class B substance (crack cocaine), over nine years ago, when Leviner was twenty-three years old, and for the conviction which followed the instant felon in possession case, on September 30, 1997, for possession with intent to distribute a class D substance, marijuana.[18]

The Commission made certain compromises when it promulgated the criminal history guidelines.[19] Recognizing that those compromises necessarily diluted the validity of the criminal history measure, U.S.S.G. § 4A1.3 authorizes a downward departure

---

**17.** There are six criminal history categories (I–VI). Scores 10, 11, and, 12 are in Category V.

**18.** The Boston Municipal Court's conviction was for possession of marijuana, a class D substance as well as for use of a motor vehicle without authority. If I were to count that offense as a drug offense, rather than a motor vehicle related charge, five points would be attributable to minor drug charges.

**19.** Stephen G. Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 19–20 (1988).

when the criminal history category over-represents the "seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3 (1997).

Obviously, trial courts should not make this determination out of thin air. Rather, it is appropriate to analyze the purpose of the criminal history system, its structure and its limitations, and then to determine where this defendant's record fits: Does the record suggest the likelihood of recidivism for a felon in possession charge, as opposed to minor drug possession or motor vehicle offenses? How does the defendant's record compare with other Category V offenders? What does the record teach the Court about the nature of this offender, relative to other information available to the Court?

## A. Purpose of the Criminal History System

Criminal history has been described by one commentator as an "anomaly" in the guidelines system.[20] Like traditional offender characteristics, such as employment history and family background which the Commission rejected for the most part in the determination of the sentence, criminal history has no direct relationship to the offender's current offense of conviction. Employment history and family background factors arguably point in opposite directions.[21] Criminal history, so the Commission thought, did not. Instead, criminal history was found to be a strong predictor of recidivism and a good measure of culpability.[22] But while that may be so in general, in particular cases, as with Leviner, the relationship breaks down.

## B. The Significance of Measuring Criminal History Points by the Length of Sentence the Prior Conviction Received

The current system scores convictions based on the length of the sentence imposed for the offense. Prior sentences of more than thirteen months receive three points, sentences between six and thirteen months receive two points, and those of less than six months receive one point. See § 4A1.1. The system has three problems, all of which resonate in this case:

### 1. The criminal history score does not accurately reflect the relatively minor nature of Leviner's record.

The criminal history system of the Guidelines does not accurately account for differences in the seriousness of the defendant's prior convictions. In the case of Leviner's record, for example, his eighteen month term for possession with intent to distribute drugs (the May 13, 1997, charge) would receive the same score as would an eighteen year sentence for murder.[23] Furthermore, the cumulative effect of all the minor convictions and their interrelationships is to put Leviner in the same class as would be a far more serious offender.

### 2. The criminal history score does not accurately reflect the non-violent nature of Leviner's record.

Since the criminal history system is focused entirely on the sentences received for the prior convictions, it does not make distinctions concerning the kind of offense: Motor vehicle versus fraud, violent versus non-violent. Indeed, the violent/non-violent line, for example, may well be more meaningful in

**20.** Aaron J. Rappaport, *Criminal History and the Purposes of Sentencing*, 9 FSR 184 (February 1997).

**21.** Breyer, *supra* at 19–20. An abusive family background on the one hand might suggest a higher likelihood of recidivism; it may also suggest that the criminal activities are more "understandable" and thus less culpable. Rappaport, *supra* at 184.

**22.** United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 42 (1987)(quoting American Bar Association, *Standards for Criminal Justice: Sentencing § 18–2.2*, commentary at 68).

**23.** *See* Michael Gelacak, Ilene Nagel, Barry Johnson, *Departures Under the Federal Sentencing Guidelines: An Empirical and Jurisprudential Analysis*, 81 Minn. L.Rev. 299, 355 (1996).

terms of predicting recidivism and evaluating the offender's culpability.[24]

Again, in Leviner's case, except for one offense, at age seventeen, none of the convictions reflect a crime of violence, or indeed, even the use of a gun. The instant charge is the first.

To treat this man as if he were only a point on a grid, the intersection of an offense score of seventeen and a criminal history of Category V, would do violence to the purposes of the Sentencing Guidelines. It would treat someone convicted of Felon in Possession of a Firearm with a minor record, solely because he had a few sentences in the criminal history (1), (2), and, (3) range, the same as someone with multiple, violent crimes, and multiple ten to fifteen year sentences. It would create a new form of disparity, treating offenders that are completely different in a like way.

### 3. The criminal history score mirrors disparities in state sentencing, and in particular, racial disparities.

By counting the imprisonment that the defendant has received for the prior offenses, the system effectively replicates disparities in sentencing in the state system.[25] This would include not only the ordinary disparities between similarly situated defendants, but racial disparities.

Motor vehicle offenses, in particular, raise deep concerns about racial disparity. Studies from a number of scholars, and articles in the popular literature have focused on the fact that African American motorists are stopped and prosecuted for traffic stops, more than any other citizens.[26] And if that is

so, then it is not unreasonable to believe that African Americans would also be imprisoned at a higher rate for these offenses, as well.

Leviner's motor vehicle offenses were mainly for driving while his license was suspended (except for one use without authority)—not one charge involved driving erratically, or violating a traffic law. The distinction is important. While I can make no judgment about what happened specifically with Leviner's motor vehicle charges, surely, the studies described above raise questions about what drew the officer's attention to Leviner in the first place.

Moreover, these stops evolved into "countable" offenses under the Guidelines only because they were offenses for which Leviner received more than thirty days' imprisonment. Again, without knowing the specific facts surrounding each sentence, this record raises concerns at the very least. Would others have received the same sentence who were similarly situated, no matter how often they had been apprehended driving after their license had been suspended?

### C. The Defendant's Overall Record Relative to Other Offender Information

Leviner's record shows a man who, until 1997, worked consistently and took care of his family. He had an eleven year period with nothing but operating after suspended license offenses, with two exceptions—a possession with intent conviction arising from a 1985 arrest in which he was found in possession of five $10 bags of marijuana and a 1994 use without authority and possession of marijuana charge.

---

**24.** *See* Tom Hillier, *Chapter Four: Time for an Overhaul, Or a Tuneup,* 9 FSR 201, 202.

**25.** *See Id.* at 201.

**26.** Tracey Maclin, *Race and the Fourth Amendment,* 51 Vand. L.Rev. 333, 341–352 (1998); Sean Hecker, *Race and Pretextual Traffic Stops: An Expanded Role for Civilian Review Board,* 28 Colum. Hum. Rts. L.Rev. 551, 554–569 (1997); Jennifer A. Larrabee, *"DWB (Driving While Black)" and Equal Protection: The Realities of an Unconstitutional Police Practice,* 6 J.L. & Pl'y 291, 296 (1997); David Harris, *Driving While Black and All Other Traffic Offenses: The Su-*

*preme Court and Pretextual Traffic Stops,* 87 J.Crim. L. & Criminology, 544, 560–69; Christopher Hall, *Challenging Selective Enforcement of Traffic Regulations After the Disharmonic Convergence: Whren v. United States, United States v. Armstrong and the Evolution of Police Discretion,* 76 Tex. L.Rev. 1083, 1088 (1998); Matthew Dolan, *Summit Addresses Biased Police Stops Officials, Citizens Discuss Solutions in the Shadow of Hampton Incident,* The Virginian–Pilot and The Ledger–Star, Norfolk, Va., November 22, 1998, A1; Rick Sarlat, *Racial Profiling on Interstates is Under Attack: Pa. Legislation drafted,* The Philadelphia Tribune, May 26, 1998, 1A.

In 1997 circumstances changed. Leviner believed he was passed over for more responsible work at his place of employment because of his race. More serious offenses followed—possession with intent to distribute marijuana and this Felon in Possession offense. While age and employment records have been rejected by the Commission as not ordinarily relevant, *see e.g.*, USSG §§ 5H1.1 (age); 5H1.5 (employment record); 5H1.6 (family ties and responsibilities), in this case they help to illuminate the relationship between this record and Leviner's likely recidivism and culpability. A succession of nonviolent offenses, and minor drug possession charges, mixed in with consistent employment and family obligations suggest someone whose drug problems had never been addressed in the past and thus he continued to re-offend. If the purpose of criminal history computations is to predict recidivism and reflect culpability, this record at the most suggests the likelihood that without help, Leviner will repeat his minor drug and motor vehicle crimes—not gun offenses or crimes of violence.

As noted above, to treat this defendant the same as an offender with a Category V criminal history of violent offenses, no employment history to speak of, or family life, would be to create a new, and even more grotesque disparity than in the past. I will consider Leviner as having a criminal history of four, taking out the seven points attributable to the motor vehicle offenses.

## V. THE RELATIONSHIP BETWEEN THIS FEDERAL SENTENCE AND A PENDING STATE SENTENCE

The defendant is currently serving an eighteen month House of Correction sentence for the drug offense for which he was convicted two weeks after the instant offense. He will be released from the state sentence in February of 1999. The defendant argues that I should make the instant sentence concurrent with the state sentence he is currently serving and indeed, should credit time already served under the state sentence. Had the defendant been arrested for the two offenses at the same time, the defendant argues, he would have received a concurrent sentence even under the Guideline grouping rules.

Although the argument is interesting, the defendant was not arrested for the two offenses at the same time. While it is not significant for the Felon in Possession calculation that two weeks after his arrest for gun possession Leviner was convicted for the drug offense, it surely bears on the ultimate sentence. Leviner, for whatever reasons, had obviously begun to hurtle out of control, in a way that was distinctly different from anything he had done in the past.

Accordingly, I will make this sentence concurrent, but only to the extent that two months of the state sentence overlap the beginning of the federal sentence. However, I will not deduct the remaining months already served under state auspices.

## VI. SENTENCE

In order to deal with Leviner's obvious drug problem and mental issues, I have ordered thirty months' incarceration, at a facility to address those problems. F.C.I. Raybrook has been recommended in order for Leviner to participate in the 500 hour Bureau of Prisons ("BOP") Drug Treatment Program and BOP mental health program. BOP will report the results of this placement to me, on a regular basis, should the Bureau agree.

Supervised release of three years will follow, during which time Leviner will be subject to specific conditions, including mental health and drug counseling.

**SO ORDERED.**